In re ENRON CORP., et al.,
Reorganized Debtors.

Enron Corp., Plaintiff,

v.

J.P. Morgan Securities Inc.,
et al., Defendants.

Bankruptcy No. 01–16034.
Adversary No. 03–92677.

United States Bankruptcy Court,
S.D. New York.

May 2, 2006.

Venable LLP, Special Litigation Counsel for the Reorganized Debtors (Richard L.

Wasserman, Esq., Michael Schatzow, Esq., Robert L. Wilkins, Esq. Of Counsel), Baltimore, MD, Togut, Segal & Segal LLP (Albert Togut, Esq., Frank A. Oswald, Esq., Scott E. Ratner, Esq. Of Counsel), New York, NY, Attorneys for the Reorganized Debtors.

Cleary Gottlieb Steen & Hamilton LLP (Jeffrey A. Rosenthal, Esq., Boaz A. Weinstein, Esq. Of Counsel), New York, NY, Attorneys for Lehman Brothers Japan, Inc. and Lehman Commercial Paper Inc.

## OPINION DENYING ENRON'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT AGAINST LEHMAN BROTHERS JAPAN, INC.

ARTHUR J. GONZALEZ, Bankruptcy Judge.

### FACTUAL AND PROCEDURAL HISTORY

#### The Debtors

Commencing on December 2, 2001, and from time to time continuing thereafter, Enron Corp. ("Enron") and its affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On July 15, 2004, the Court entered an Order confirming the Debtors' Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan") in these cases. The Plan became effective on November 17, 2004.

#### Motion for Leave to Amend the Complaint

On November 6, 2003, Enron initiated this adversary proceeding to recover more than one billion dollars that was allegedly prepaid or redeemed to certain financial institutions, including Lehman Commercial Paper Inc. ("Lehman"), prior to the matu-

rity of A2/P2 commercial paper. Lehman Brothers Japan, Inc. ("Lehman Japan") was not named a defendant in the original complaint. On the same date, Enron filed a motion to seek the Court's assistance for the production of documents that identified transferees and beneficiaries of these pre-payments. Prior to the commencement of this adversary proceeding on November 6, 2003, Lehman's counsel produced to Enron the trade confirmations bearing bates numbers LCPI 00039, 00040, 00047, 00048 and 00049, identifying Lehman Japan by the initials "LBJ" as a transferee of certain commercial paper prepayments. On the trade confirmations, the information with CUSIP Number 29356AYS9 and 29356AZE9 appeared as follows:

LBJ FOR MITSUBISHI TB

FOR MERRILL LYNCH INV MGRS

ARK MORI BUILDING 36TH FLOOR

1–12–32 AKASAKA MINATO–KU

TOKYO 107–6036 JAPAN.

On November 18, 2003, the Court issued an order ("November 18 Order"), which directed certain parties to initially disclose to Enron the names, and if available, the addresses and telephone numbers of the transferees and beneficiaries in connection with the commercial paper transactions. By the November 18 Order, Lehman was directed to make limited Fed.R.Civ.P. 26(a)(1)(A) initial disclosures on an expedited basis of the information regarding the entity with CUSIP Number 29356AYS9.

On December 1, 2003, Enron amended its original complaint to add transferees or beneficiaries of the commercial paper transactions disclosed pursuant to the November 18 Order.

On or about December 2, 2003, pursuant to section 546(a) of the Bankruptcy Code, the statute of limitations for preference actions expired.

On May 13, 2004, at Enron's request, the Court issued an order directing certain defendants in this adversary proceeding to comply with the November 18 Order ("May 13 Order"). However, Lehman was not one of the defendants within Enron's request and therefore not included in the May 13 Order. On the same date, the Court granted Enron's Motion for Extension of Time for Service of the Amended Complaint ("Motion for Extension of Time"), which extended the time for service of the First Amended Complaint to and including September 30, 2004.

Lehman Japan received actual notice of this adversary proceeding on September 29, 2004. On October 19, 2005, Enron filed a motion for Leave to Amend its Complaint ("Motion for Leave to Amend"), requesting, among other things, to add transferees and beneficiaries of the prepayments of commercial paper, including Lehman Japan, as new defendants in this adversary proceeding.

On December 1, 2005, Lehman and Lehman Japan each filed an objection to the Motion for Leave to Amend. A hearing was held on December 15, 2005.

## DISCUSSION

### Parties' Contentions

Enron seeks to add a new defendant, Lehman Japan, relating back to its original complaint and its first amended complaint (the "Original Pleadings") pursuant to Federal Rule of Civil Procedure 15(c)(3) ("Rule 15(c)(3)"). Citing *Randall's Island Family Golf Ctr. v. Acushnet Co. (In re Randall's Island)*, 2002 WL 31496229 (Bankr.S.D.N.Y. Nov.8, 2002), Enron argues that its failure to include Lehman Japan was not a strategic decision. Rather, Enron argues that its exclusion of Leh-

man Japan from the Original Pleadings was attributable to its lack of knowledge of the identity of Lehman Japan before the statute of limitations expired and lack of such knowledge was not its fault. Enron alleges that Lehman refused to cooperate and provide it further information about Lehman Japan after giving Enron trade confirmations. Thus, Enron concludes that Lehman engaged in concealment that prevented it from finding the identity of Lehman Japan. Citing *Byrd v. Abate*, 964 F.Supp. 140 (S.D.N.Y.1997), Enron argues that the lack of knowledge of the identity of Lehman Japan arising out of Lehman's concealment is a "mistake" that satisfies Rule 15(c)(3).

In response, citing *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466 (2d Cir. 1996), Lehman Japan contends that Enron's failure to include Lehman Japan in its Original Pleadings was not a "mistake" under Rule 15(c)(3) because before or at the time of filing its Original Pleadings, Enron was aware of the role of Lehman Japan through the trade confirmations. Moreover, Lehman Japan contends that Lehman did not deliberately conceal any information regarding Lehman Japan. On the contrary, Lehman Japan believed that Lehman was in compliance with the November 18 Order by submitting trade confirmations to Enron voluntarily before Enron filed its first complaint on November 6, 2003.

### Analysis

The issue is whether a plaintiff's claim against a new defendant can relate back to the Original Pleadings pursuant to Rule 15(c) because of a "mistake," after the statute of limitations expired.

Rule 15(c) provides, in pertinent part, that:

An amendment of a pleading relates back to the date of the original pleading when

. . .

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(2)-(3).

The Court has held in *Enron* that the moving party who asserts the relation back bears the burden of proof. *In re Enron Corp.*, 298 B.R. 513, 522 (Bankr.S.D.N.Y.2003) (citation omitted). Under Rule 15(c)(3), a plaintiff can amend original pleadings by adding a new party after the statute of limitations has expired only if all of three requirements are satisfied. *Barrow*, 66 F.3d at 468 (citing "[s]uch an amendment may only be accomplished when all of the specifications of Fed.R.Civ.P. 15(c) are met." (citation omitted)). First, the claims asserted against the new party "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Enron Corp.*, 298 B.R. at 522. Second, the new party "has received such notice of the institution of the action" within the period for service of the summons and complaint pursuant to Rule 4(m), so that "the party will not be prejudiced in

maintaining a defense on the merits." *Id.* Third, the new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it." *Id.*

In the instant matter, none of the parties dispute the satisfaction of the first requirement under Rule 15(c) that the claims against Lehman Japan arose out of the conduct, transaction or occurrence set forth in the original complaint dated November 6, 2003. Moreover, according to Enron, Lehman Japan received actual notice of this adversary proceeding on September 29, 2004, consistently with Rule 15(c)(3) and the Court's Order that extended the time for service to and including September 30, 2004. Further, Lehman Japan does not dispute that assertion, thereby conceding that the second requirement under Rule 15(c)(3) is established. The contested issue is whether the third requirement under Rule 15(c)(3)-the "mistake" test-is satisfied by Enron. Under that test, Enron must bear the burden to prove that Lehman Japan "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it." Fed.R.Civ.P. 15(c)(3).

█ To establish "mistake" under Rule 15(c)(3), a plaintiff must show either factual mistake (for example, he or she misnamed a party or misidentified the party [it] wished to sue) or legal mistake (for example, he or she misunderstood the legal requirements of his or her cause of action). *Enron*, 298 B.R. at 524; *see also Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 36 (2d Cir.1996).

(1) Mistake or Choice

The Second Circuit found that the "mistake" requirement "presupposes that in fact the reason for [a new defendant] not being named was a mistake in identity."

*Cornwell v. Robinson,* 23 F.3d 694, 705 (2d Cir.1994); *see also Richardson v. John F. Kennedy Mem'l Hosp.,* 838 F.Supp. 979, 987 (E.D.Pa.1993) (citing that "the type of mistake with which Rule 15(c) is concerned" is a mistake "in identifying the party whom he wanted to sue").

█ Courts, including the Second Circuit, have held that there is no mistake in identifying a new party when the plaintiff possessed information related to the identity of such party and its involvement in the alleged transactions and chose not to name it. *Cornwell,* 23 F.3d at 705; *see also Richardson,* 838 F.Supp. at 987. In *Cornwell,* the plaintiff, who initially did not include certain individuals as defendants in the original complaint but knew that they participated in the alleged actions, sought to relate back those individuals under Rule 15(c)(3). *Cornwell,* 23 F.3d at 700. The *Richardson* case discussed a different scenario, in which the plaintiff dismissed the claims against the original defendant and substituted a new defendant. *Richardson* 838 F.Supp. at 986. The *Richardson* court held that a "mistake" exception was not available when a plaintiff knew of the identity of the new defendant and its possible role in the alleged transaction, but "chose" not to sue the new party at the time of the original complaint. *Id.* at 987.

█ Moreover, the Second Circuit has held that the failure to identify the new defendant cannot be characterized as a mistake when a plaintiff knew that such defendant must be named at the time of the original complaint, even though the plaintiff was barred from naming it due to lack of the knowledge of its identity. *Barrow,* 66 F.3d at 470. (citing that "Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify

individual defendants when the plaintiff knows that such defendants [individual officers rather than a department head] must be named cannot be characterized as a mistake"). The *Barrow* Court also held that the "mistake" requirement is not satisfied if adding the new defendant was not to correct a mistake, but to correct a lack of knowledge. *Id.*

The instant matter involves a plaintiff, who seeks to add a new party whom the plaintiff missed at the time of the original complaint, but argues that the failure to name the new defendant was attributable to its lack of knowledge of the identity of such defendant caused by the concealment of the necessary information. The Court will examine whether the factual situation in the instant matter satisfies the *Cornwell* and the *Barrow* tests related to the plaintiff's argument regarding its lack of knowledge of the defendant's identity. The Court will address the plaintiff's argument on concealment in the next section.

The *Cornwell* court found that the failure to name the new defendants is considered a matter of choice, not mistake, where a plaintiff (1) knew of the identities of the defendants, and (2) identified the defendants in an exhibit to the original complaint but chose not to name them in the complaint itself. *Cornwell*, 23 F.3d at 705. To determine whether Enron made a mistake or made a choice not to name Lehman Japan at the time of the Original Pleadings, the Court will, among other things, consider whether Enron had knowledge of the identity of Lehman Japan and its involvement in the commercial paper transactions before the statute of limitations expired, and if so, what mistake, if any, occurred that resulted in Lehman Japan not being named.

■ Prior to the commencement of this adversary proceeding on November 6, 2003, Lehman's counsel produced to Enron trade confirmations identifying Lehman Japan as "LBJ." On the trade confirmations, the information was shown as follows:

LBJ FOR MITSUBISHI TB

FOR MERRILL LYNCH INV MGRS

ARK MORI BUILDING 36TH FLOOR

1–12–32 AKASAKA MINATO–KU

TOKYO 107–6036 JAPAN.

As indicated, the confirmations contained the initials "LBJ" rather than the complete and precise name "Lehman Brothers Japan, Inc." Based on the trade confirmations provided by Lehman, Enron amended its original complaint and identified other defendants in its first amended complaint, even though they were identified by initials on the trade confirmations rather than their full names. For instance, Enron named the defendants in its first amended complaint with initials, such as "GMDD," "76 MONY CB ACCT.," "07 POOLED ACCOUNT # 7," "PRU/GENERAL LENDING COLLATERAL ACCT. # PIC00006," and "PRU/PHMCMM/PIC00183." There was no reason offered by Enron as to why Lehman Japan should be distinguished from these defendants regarding Enron's ability to name Lehman Japan by using the initials "LBJ." Additionally, because the address information was listed on the trade confirmations, Enron was able to serve Lehman Japan with complaints and notices. In fact, Enron provided an actual notice by sending a letter with confirmed receipt to Lehman Japan, stating that "Enron was going to add that party as a defendant in this proceeding. . . ." Memorandum of Law in Support of Motion of Enron Corp. for Leave to Amend its Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure at 9–10, *Enron*

*Corp. v. J.P. Morgan Securities Inc., et al. (In re Enron Corp.),* Adv. Pro. No. 03–92677 (Docket No. 1000) (October 19, 2005).

Further, the trade confirmations provided by Lehman revealed the names of the principal, issuer and beneficiary, and the dates, amount and terms of the commercial paper transactions. Although Enron did not know Lehman Japan's complete name, it knew from the trade confirmations reference to "LBJ" that such entity was a party who was involved in Enron's commercial paper transactions on or about November 6, 2001. Enron was aware of the involvement of an entity identified as "LBJ" because it sought for further information regarding "LBJ," such as its complete name. Significantly, Enron successfully served Lehman Japan with complaints and notices, and wrote a letter to it indicating that Enron was going to add it as a defendant—all by use of the name "LBJ." Enron intended to sue Lehman Japan and did not mistakenly identify another party. On the contrary, it simply excluded Lehman Japan from the pleadings.

The Court does not find that the missing "contextual information," as claimed by Enron, prevented it from identifying Lehman Japan by using the initials "LBJ" as a defendant at the time of its Original Pleadings. Even if Enron did not have any information concerning the identity of Lehman Japan, which the Court finds that it was not the case, the failure to identify the new defendant cannot be characterized as a mistake when a plaintiff knew that such defendant must be named at the time of the original complaint. *Barrow,* 66 F.3d at 470. The *Barrow* court stated that "Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants [individual officers rather than a department head] must be named cannot be characterized as a mistake." *Id.*

The instant matter involves a situation where Enron knew that "LBJ" was not the complete name of the defendant. Enron also knew, like other similarly situated defendants, such as "GMDD" that Enron named in its complaints before the statute of limitations expired, that an entity with the initials "LBJ" must be named as a defendant at the time of the Original Pleadings. There was no plausible explanation provided as to why Enron failed to include it by use of the initials "LBJ," as it did with other defendants. According to the *Barrow* test, the failure to name Lehman Japan cannot be characterized as a mistake, even though Enron did not know that "LBJ" stands for "Lehman Brothers Japan, Inc." at the time of the Original Pleadings. Moreover, Enron, here, seeks to correct a lack of knowledge concerning the complete name of a defendant whom it entirely omitted in the Original Pleadings, not a mistake in identity. Accordingly, Enron has also failed the *Barrow* test, in which the "mistake" requirement is not satisfied if adding the new defendant was not to correct a mistake, but to correct a lack of knowledge. *Barrow,* 66 F.3d at 470.

Additionally, the facts in the instant matter are distinguishable from those in the *Randall's Island* case cited by Enron. In *Randall's Island,* there was no evidence to support that the plaintiffs knew that the new defendant was involved in the alleged transactions, but nonetheless decided to sue another defendant at the time of the original complaint. *Randall's Island,* at *5, 2002 WL 31496229. The plaintiffs in *Randall's Island* intended to sue the new defendant and incorrectly identified anoth-

er defendant as the party that was involved in the alleged transactions. *Id.* In that case, the plaintiffs corrected the error by adding a new defendant after discovering the misidentification. *Id.* The *Randall's Island* case involved a situation where the plaintiffs misidentified the correct defendant by error. *Id.* By contrast, here, there was no misidentification in the identity of Lehman Japan.

The *Cornwell* court found that the "mistake" requirement "presupposes that in fact the reason for [a new defendant] not being named was a mistake in identity." *Cornwell*, 23 F.3d at 705. The failure to name Lehman Japan by the initials "LBJ" in the Original Pleadings is not a mistake in identity that would prevent Enron from timely naming Lehman Japan. As previously discussed, Enron intended to sue Lehman Japan and did not mistakenly identify another party. Enron simply did not name Lehman Japan by using the initials "LBJ" as a defendant in the Original Pleadings by error when it was aware of its involvement.

 Moreover, citing *Randall's Island,* Enron argues that the "mistake" requirement under Rule 15(c) is satisfied on the ground that it did not engage in any strategic tactic to delay the litigation and did not act in bad faith by adding a new defendant after the statute of limitations expired. However, this state of mind alone is not sufficient to establish "mistake" when sufficient information was available to the plaintiff to have named the new defendant before the statute of limitations expired. As stated previously, there was no plausible explanation provided as to why Enron failed to timely name Lehman Japan by using the initials "LBJ." The fact that the failure may not have been intentional does not provide a rationale for extending the mistake exception under Rule 15(c)(3). Rather, Enron must meet its

burden to demonstrate that the failure to name Lehman Japan was the result of a mistake in identity in order to satisfy Rule 15(c)(3).

Contrary to Enron's argument that the lack of knowledge of the identity of Lehman Japan caused its failure to include Lehman Japan by using the initials "LBJ" at the time of the Original Pleadings, the Court finds that the information provided by Lehman was sufficient to include it as a defendant before the statute of limitations expired and Enron has failed to provide a reasonable explanation as to why it did not name Lehman Japan by using the initials "LBJ" in the Original Pleadings. Because Enron had sufficient knowledge of the identity of Lehman Japan, even if not its complete name as "Lehman Brothers Japan, Inc.," and of its involvement in the alleged transactions to include Lehman Japan in the Original Pleadings, the failure to do so "is considered a matter of choice, not a mistake" under the *Cornwell* test. *Cornwell*, 23 F.3d, at 705.

Therefore, the Court has found that the omission of Lehman Japan by using the initials "LBJ" in this adversary proceeding was simply a failure to use the information available to name a defendant and such omission was not the result of a mistake under Rule 15(c)(3).

(2) Mistake Arising out of Concealment

The Court has found that Enron possessed sufficient information about Lehman Japan and its role in this adversary proceeding to include it as a defendant prior to the expiration of the statute of limitations. It would therefore seem that even if concealment were established, it would not warrant relief under Rule 15(c) because such concealment would not have prevented Enron from timely naming Lehman Japan.

However, for sake of completeness, the Court will address Enron's concealment argument. Citing *Byrd*, Enron urges the Court not to follow the holding in *Barrow* on the grounds that the facts of the instant case are distinguishable. According to Enron, the holding in the *Byrd* case is applicable because there was concealment that prevented Enron from receiving further information about Lehman Japan beyond the trade confirmations. In *Byrd*, the plaintiff diligently searched and could not find any information concerning the identity of the new defendant in time due to the obstruction or deliberate concealment by the counsel of the new defendant. *Byrd*, 964 F.Supp. at 145–46. Enron argues that because all the information of the transferees and beneficiaries is hidden from the issuer resulting from the nature of the operation in the commercial paper market, Enron, as an issuer, sought to obtain the information regarding Lehman Japan diligently from the beginning and its effort was frustrated by nondisclosure of Lehman. Enron argues that in October 2003, it asked Lehman for the name and address of Lehman Japan, but Lehman did not respond to its request.

Lehman counters that the information appearing on the trade confirmations about Lehman Japan was sufficient for Lehman to be in compliance with the November 18 Order; further disclosure without permission from Lehman Japan would violate the proprietary and fiduciary rights and agreements between Lehman and its customer, Lehman Japan. Lehman and Lehman Japan further argue that on November 25, 2003, Lehman faxed Enron a letter ("November 25 Letter") stating that Lehman believed that it had complied with the November 18 Order by giving Enron the trade confirmations that bear bates numbers Lehman 00001 through 00055, and that it welcomed Enron's questions. According to Lehman Japan, after receiving the November 25 Letter, Enron did not ask Lehman who "LBJ" was; nor did it allege that Lehman had not met the initial disclosure requirement set forth by the November 18 Order. Lehman Japan argues that Enron failed to perform due diligence, by, among other things, not "coming back" to Lehman and requesting specific information about "LBJ" until after the statute of limitations expired. As a result, Lehman Japan concludes that it is not a case where Lehman was seeking to actively conceal the identity of Lehman Japan. Therefore, according to Lehman Japan, the *Barrow* case, rather than the *Byrd* case, is controlling here.

In the *Byrd* case, the identity of the new defendant was information "uniquely within the knowledge of" the defendant's counsel. *Byrd*, 964 F.Supp. at 146. The Court acknowledges that Enron relied on its brokers or dealers, like Lehman, to provide information about the transferees and beneficiaries of commercial paper transactions. Accordingly, it was Lehman who uniquely possessed the information that would identify Lehman Japan as the transferee of certain commercial paper transactions at the outset. However, after the information regarding Lehman Japan on the trade confirmations was disclosed by Lehman, although "LBJ" was not a complete name, the information was no longer exclusively in the control of Lehman. The trade confirmations revealed the following:

LBJ FOR MITSUBISHI TB

FOR MERRILL LYNCH INV MGRS

ARK MORI BUILDING 36TH FLOOR

1–12–32 AKASAKA MINATO–KU

TOKYO 107–6036 JAPAN.

Enron could have investigated on its own to find out that "LBJ" stood for "Lehman Brothers Japan, Inc." before the statute of

limitations expired. In fact, Merrill Lynch Investment Managers, L.P., whose name appeared on the trade confirmations, disclosed "LBJ's" full identity to Enron. *See* Reply of Enron Corp. to Objection of Defendant Lehman Commercial Paper Inc. to the Motion of Enron Corp. for Extension of Time for Service of the Amended Complaint at 2, *J.P. Morgan Securities Inc., et al.* (Docket No. 353) (May 12, 2004).

Lehman Japan argues that Lehman, as a broker or dealer, has a fiduciary duty not to disclose its clients' proprietary information without the approval of its clients. Whether Lehman would violate its fiduciary obligation to its clients by providing the information pursuant to the November 18 Order is not an issue before the Court. Instead, the Court must determine whether there was concealment in the instant case as found in the *Byrd* case.

As discussed above, although the trade confirmations contained the initials "LBJ," rather than "Lehman Japan," this fact did not prevent Enron from naming Lehman Japan by using the initials "LBJ" as a defendant at the time of the Original Pleadings. The *Byrd* court distinguished the *Barrow* case because "it was the defense [party], rather than the plaintiff, who failed to identify the individual defendant despite Byrd's requests for that information." *Byrd*, 964 F.Supp. at 146. To establish relief under the *Byrd* case, the information must be repeatedly requested by the plaintiff and the defense counsel must repeatedly refuse to cooperate by not providing any information about the new defendant.[1] *Id.* at 145–46. In *Byrd*, the defense counsel "did not reveal the name of the individual officer, nor turn over log books, as had been requested by plaintiff's counsel." *Id.* at 143. In fact, the defense counsel in *Byrd* did not comply with the plaintiff's repeated requests and disclose the name of the new defendant until after the limitations period ran. *Id.* at 146.

The instant case presents a different scenario from *Byrd*. In *Byrd*, the plaintiff did not have sufficient information to identify the new defendant whereas Enron did in the instant matter as discussed previously, although the name was not as complete as "Lehman Brothers Japan, Inc." on the trade confirmations. If Enron needed more information to add Lehman Japan as a defendant, Enron should have made a greater effort to obtain such information following Lehman's refusal to disclose anything beyond the trade confirmations before the November 18 Order. Particularly, in light of the November 25 Letter,[2]

---

1. In *Byrd*, plaintiff's counsel first requested disclosure of the name of the defendant. After the first request was rejected by the Corporation Counsel, plaintiff's counsel requested log books. *Byrd*, 964 F.Supp. at 143. The counsel's second request was rejected until "either Byrd agreed to bifurcate the trial or bifurcation was determined by motion to the Court." *Id.* "Despite the resolution of the bifurcation issue, Corporation Counsel did not reveal the name of the individual officer, nor turn over log books, as had been requested by plaintiff's counsel." *Id.*

2. In the November 25 Letter, Jeffrey Rosenthal on behalf of Lehman wrote the following to Enron:

... the disclosure obligations of [Lehman] pursuant to [the November 18 Order] have been fulfilled by our prior production of documents bearing bates numbers LCPI 00001–00055. As the result, we understand that all entities disclosed by us have already been named as defendants in this action, which was the sole purpose for your motion according to representations you made to the Court.

 . . .

Please note that [Lehman] also reserves its right to supplement or amend its prior production should different or additional information become known to it.
Please do not hesitate to contact me should you have any questions or comments.

Lehman indicated that Enron was welcome to ask for more information on the trade confirmations. No record demonstrates that Enron ever reasserted its request to Lehman for information regarding "LBJ" after the November 25 Letter. Moreover, the Court notes that Enron successfully served Lehman Japan with complaints and notices on September 29, 2004 based upon the information on the trade confirmations provided by Lehman. However, there is no evidence demonstrating that Enron ever attempted to contact Lehman Japan directly for information.

Further, had all those efforts failed, Enron could have sought to compel Lehman to disclose the information about "LBJ" before the statute of limitations expired by, among other things, including the request in the motion that resulted in the May 13 Order directing certain defendants in this adversary proceeding to comply with the November 18 Order. However, Lehman was not one of the defendants within Enron's request and therefore was not included in the May 13 Order. Enron failed to take necessary steps to seek information that it argues it needed to properly identify Lehman Japan. Failure to identify the new defendant by the plaintiff was not a "mistake," if adding the new defendant was not to correct a mistake but to correct a lack of knowledge. *Barrow,* 66 F.3d at 470.

Based upon the foregoing, Enron has failed to establish that its failure to name Lehman Japan was the result of any alleged concealment by Lehman. Therefore, Enron has not satisfied its burden under Rule 15(c)(3).

### CONCLUSION

For the foregoing reasons, the Court concludes that Enron fails to meet its bur-

den to satisfy the "mistake" test under Rule 15(c) for relation back to the original complaint. Therefore, the Court sustains Lehman Japan's objection to Enron's Motion for Leave to Amend.

Counsel for Lehman Japan is directed to settle an order consistent with this Opinion.

Declaration of Robert L. Wilkins, Exhibit D, *J.P. Morgan Securities Inc., et al.* (Docket No. 319) (March 30, 2004).